This case before us this morning is Dino Nobel v. Steadfast Insurance Company, 23-4010. Counsel for Appellant, would you make your appearance and proceed, please? Thank you, Your Honors. My name is Dan Brown on behalf of Appellant Dino Nobel. Your Honors, one of the points made in Steadfast's briefing relates to what they consider to be a reasonable insured, and I'd like to make sure that we're focusing on a reasonable insured. The sentence that Steadfast claims is that no reasonable insured could read the Vermont exclusion and believe anything other than it only applied to Vermont, and I think that's incorrect. Why would the word Vermont be used at all if it wasn't meant to be limited to Vermont? I mean, wouldn't you use Vermont and other states or Vermont, Missouri, in your case, Texas? Well, there's probably a why answer to that, and then there's also a legal answer that follows, Your Honor. The first answer is that the why may well be because Steadfast believed that they were following Vermont law when they said that they were extending some pollution coverage. That does not mean, however, that that is the limit of the pollution coverage that they extend. Any insurance company could extend more coverage than is required by law, and certainly any insured is entitled to take the language of the policy they receive and use the language that's there to determine what that coverage is. If this insured had asked itself the simple question, does it matter where the pollution comes from? The answer is in the policy. It's at appendix volume two, page 95, and it says that if the pollution comes from any site or location on which you have any, or any contractors or subcontractors working directly or indirectly are performing operations. So we know there's an affirmative statement of the geographic scope of coverage D. If the insured had asked itself. Let me, going back to Judge Carson's question, if we read the policy the way you're suggesting it would mean, for example, that in addition to the Vermont exclusion applying to everyone, the Indiana exclusion applies to everyone. And the Indiana exclusion actually broadens the exclusion by saying that it applies whether or not such irritant or contaminant has any function in your business, operations, et cetera. But the Vermont one says, oh yeah, we cover pollution. If you read it the way you want, the policy makes no sense at all because these then become indirect contradiction. They are not. How do you know which provision, if Indiana changes apply to everyone, and Vermont changes apply to everyone, and Utah changes apply to everyone, what do you do about the fact that the exclusions are mutually exclusive? They're contradictory. In fact, on the language of the exclusions, they are not contradictory, Your Honor. There is a coverage A, which does not include pollution coverage. There is a coverage D, which doesn't include pollution coverage. I sense that the concern is that there seem to be two different things going on between coverage A and coverage D. And in fact, that's true. But that's often true in policies. And Your Honor, if I could- That's not the confusion with me, but it might be for someone else on the panel. You know, I'm looking at an insurance policy that the obvious intent of is to limit as much as possible coverage for pollution. And then it adds on state-by-state exclusions to comply with state law. And while I understand your argument about subheadings, I find it hard to believe that any reasonable person looking at an exclusion that says Vermont is going to think, oh yeah, this applies everywhere in the country, irrespective of whether there's any connection to Vermont. Well, Your Honor, we know that because we're sitting in diversity, we're applying Utah law. I am aware. And Utah law in this instance in 2021 indicated that the heading is not entitled to even some weight, Your Honor, when it is not completely in harmony with the section's text. And the section's text affirmatively states what the geographic scope of coverage D that's extended means. Your Honor, if I can focus on- But it doesn't, I know you make that argument, but it doesn't say that irrespective of that, it's all around the country, but it doesn't say and doesn't have to have any connection with the state for which this exclusion was adopted. So both can be true, just like Judge Shelby decided, right? That you can have it be your coverage area is the entire, I think, United States and Canada, if I remember correctly. But that in order for you to fall under this particular exclusion, it also has to have some connection with the state that the exclusion is identified for. Well, Your Honor, I'm back at that spot where I'm thinking about that reasonable insured. And the reasonable insured can't define what some connection with Vermont means. That's a different issue than what you're arguing. You've made no argument that there's any connection under any interpretation of reasonable nexus to Vermont. So that doesn't help you. There might be some insurer out there somewhere who would have an ambiguity argument based on the vagueness of this connection. But that's not you. Well, Your Honor, the concern that I have is simply that the insured is trying to read the policy for what it says. And when it gets to that word Vermont, there isn't anything with the word Vermont that explains, oh, that means some connection. Or it means if the person was in Vermont and then drove out of Vermont. What the insured does know is that the policy itself defines how broad the coverage is in coverage D. Your Honor, if I can focus for just a moment, if you don't mind, on just an example in the policy that helps prove the point that I was trying to make a moment ago. If we were to look, for instance, at this Appendix Volume 1 at page 27, there's an exclusion in coverage A for personal and advertising injury. This is just an example of the ways in which the different coverages work independently of each other. They don't need to be harmonized with each other in order to make sense of this policy. In coverage A, personal and advertising injury is expressly excluded by exclusion O. If we turn the page on Appendix Volume 1, page 28, coverage B is coverage for personal and advertising injury liability. So we know that coverages are meant to extend different coverages for different perils under the policy. In this instance, coverage D extends a peril for pollution that does not exist in coverage A, and I'm not contending it does. The exclusions that Steadfast are relying on exclude coverage in coverage A. So once there's a coverage D extension of pollution coverage, we're no longer asking if there is an inconsistency. There definitely isn't. You can't read the policy if you're reading it precisely for an inconsistency there. The only concern that winds up being created is when the word Vermont sits at the top of that page, does that limit do all of the work of requiring that nexus? And the answer is as against the expressed terms of that policy, Utah law would not permit the heading to override those terms when those terms are inconsistent. I don't know that you're being quite accurate on Utah law. The heading can't contradict, right? But if they're in harmony, the heading can be used to some extent. I'll be very precise for a moment, Your Honor. I believe that both the Bair case and the Vanderwood case stand for the proposition that the heading is entitled to some weight, but when it is completely in harmony with the section's text. And this heading is not completely in harmony with the section's text. Those are Utah Court of Appeals cases. That is true. And I agree that the job both that the district court has and that this court has is to be predicting what Utah law is. And the Court of Appeals is instructive in that instance, yes. Yes, it's instructive, but it's not determinative. I do agree with you that it would take a Utah Supreme Court case to have determined that issue in the first place. The Utah Supreme Court has said that, you know, we're looking at the policy to see what a reasonable person would understand, right? Correct. They've rejected the reasonable expectations doctrine. But they have reaffirmed that if a reasonable person looking at it would understand what it means, then that's how we interpret it.  The difference here is that I believe that the reasonable person is entitled to read the actual body of that policy to determine what it means when it describes that geographic scope. If I can make just one more quick comment about the difference between the Louisiana exclusions that's cited. And this is largely in our brief, so I won't spend too much time on it. But I do want to make clear the difference between a general liability policy on the one hand and the property policies that are at issue in all these Louisiana exclusion cases. A property policy is based upon ensuring a site, a location. And then the damage that either occurs there or the injury that occurs there defines whether or not there's coverage because of that location. A general liability policy, and that's what this is here for Dinah Noble, extends coverage wherever the liability arises as long as it is within the coverage territory. And so it is fundamentally a different type of policy. And it's fundamentally different as well because the Louisiana exclusions don't have those affirmative statements of where the geographic scope of the coverage is that is extended there. I would be happy to reserve the balance of my time for a rebuttal unless anyone else has any questions. That's fine. Thank you. Thank you. May it please the court. Good morning. In Utah, like in other states, competing interpretation of an insurance policy must be reasonable and plausible to give rise to ambiguity. Well, and if it's ambiguous, then it's interpreted against your client. Yes, Your Honor. Correct. And you certainly have the ability to make it clear. Yes, Your Honor. The standard, however, is what would an ordinary, reasonable reader or policyholder interpret the endorsement to mean. And here, the problem for Dyno-Nobel is that it can offer no interpretation that gives any meaning to Vermont changes. This is an essential geographic identifier in the endorsement. If we turn to the endorsement itself. Well, that assumes that we give the heading meaning. Two response to that, Your Honor. First, the heading can be harmonized with the rest of the provisions of the Vermont endorsement as the district court did. And there is no contradictory authority in Utah for the proposition that where the heading is in harmony with the text of the endorsement, you give that heading some weight. But there's a second point. It has to be in complete harmony. Yes, Your Honor. And Judge Shelby's interpretation put the Vermont changes pollution language in complete harmony. Pollution often emanates from different states and can cause harm across the border. So you have a coverage territory here, a pollution liability hazard that could be outside Vermont but could cause harm in Vermont. Well, how do we know that's what that means? There's no explanation of what Vermont does in that exclusion. Whether it has to be property that's located in Vermont, whether the pollution has to emanate from a source in Vermont, or whether the pollution merely needs to pass through Vermont to reach the insured property. Your Honor, two responses to that. First, under any interpretation that gives any meaning to the language Vermont changes, it doesn't apply here where there's no connection. But my second response is that if we look at the way the endorsement is structured and the way the policy is structured, if you look at page 71 of Appendix Volume 1, the endorsement says at the top, this endorsement changes the policy. And then after that, included in the substantive change to the policy is bolded in large font, the language Vermont changes pollution. In the COVID context, and I point the court to the Eighth Circuit Lindenwood decision, it was dealing with the provision in the policy that said titles are for reference only and cannot substantively change the policy. And the court had two responses to that. First, it's not a mere title. In fact, this is different from a heading in a general commercial contract within the Roman numerals of the different provisions. This means something more. It's an essential geographic term limiting the scope of the particular endorsement. And the policy tells us that when that language follows from the provision that the endorsement changes the policy. But we also know that from the way that the policy is structured. There are endorsements that are limited to specific states, and there are endorsements that are not. The other side's interpretation provides no plausible explanation for why these narrow state-specific words would be included if the endorsement was intended to have nationwide application. What do you think about the idea that under Utah law, maybe you were under a duty to be more explanatory in the explanation of what is coverage D? Your Honor, we get to the proposition that we read coverage liberally when the policy is ambiguous. The first step is to simply read the plain language of the policy. And the plain language of the policy would be clear as many courts to have considered the question of how to interpret state-specific identifiers have concluded. And that is you wouldn't read a Vermont changes endorsement and assume that it applies in a context with absolutely no connection to Vermont. There's no circumstance under which you would assume that that language applies to a Missouri action based on emissions from a Missouri plant that exposed a Missouri worker. And instead, as Judge McHugh pointed out, there is a Missouri endorsement that governs the pollution exclusion. And there are terms that Judge Shelby recognized that reinforce the exclusion of pollution-related liability under coverage A throughout the policy. Then why tender a policy at all with Vermont in it? Your Honor, these policies are issued to policyholders with operations all over the country. Rather than a policyholder having to obtain separate policies governing their operations or liability or property in 50 different states, these endorsements are designed to bring the policy into compliance with different state-specific regulations. These forms are approved by individual state regulators throughout the country. And that is the way the policies are intended to function and structured to operate. And we know that because some endorsements have nationwide application and some do not. And that is the way they are written. How much does your argument depend on us agreeing with you that the words Vermont changes hyphen pollution are not a heading, but in fact are part of the provision itself? Our argument does not depend on that. You can those are two alternative ways to read the policy and the COVID cases take both approaches. They look at titles, in some cases as titles, and recognize that they provide necessary context, necessary direction as to the structure and organization of the policy, and that the different endorsements, state-specific endorsements, in order to have any meaning must be read that way. And there are also cases like Lindenwood that recognize that it means more. So, in our view, this falls well within the Utah precedent that gives some meaning to headings that can be construed consistently. The Utah Court of Appeals. Correct. Court of Appeals. Absolutely. I will attest it's a very good court, but it's not the Utah Supreme Court. Indeed, Your Honor. The Utah Supreme Court's broader principles, I would like to point out. The Supreme Court's broader principles are that insurance contracts are contracts of adhesion. That's correct, Your Honor. And should be strictly construed against the drafter, the insurance company. That's absolutely right, Your Honor. Here, however, there's only one plausible or reasonable interpretation of the policy that doesn't disregard any terms, that reads all the terms together, and that reads each part of the policy in relation to each other. These are the same broader insurance policy and contractual interpretation principles that courts have applied around the country when faced with this type of scenario. And those same broader principles lead to one plain meaning here. The court in the Utah Supreme Court recognizes that where the competing interpretation is not plausible, it does not create an ambiguity. And that is where we are left here, where there's really only one plausible reading that an ordinary reader would come to when faced with this policy, which clearly excludes liability for pollution under coverage A, pollution-related harm under coverage A, and then adds a coverage D that's specific to Vermont changes pollution, but says nothing about amending, replacing, modifying the pollution exclusions or changing the scope of coverage A. And where the policy is intended to modify the pollution exclusion or replace the pollution exclusion, it says so. The Missouri and Indiana endorsements, for example, the total pollution exclusions endorsements, they each say this endorsement either replaces or adds to, and then it discusses coverage, it cites to coverage A, subsection F, the pollution exclusion. Do you agree that the term coverage area is, at least with respect to the United States, unlimited? Yes, Your Honor. Okay. I agree with that. And so I guess I'm wondering, there's nothing in the Vermont changes-pollution paragraph that says it's changing the geographic limitations, does it? Is there a specific text that says it changes the, let me be precise, coverage territory? No, Your Honor, and it wouldn't, because you could have an accident in New Hampshire that is an occurrence that would be within the coverage territory, and that's what the coverage definition goes to. Okay, so that, but that's, I mean, you're cribbing off of Judge Shelby's ruminations there. Well, Your Honor, it's... I mean, that could be. It's not implausible. Or it could be that they just, for whatever reason, titled this, maybe somebody in Vermont came up with this, and they titled it Vermont changes, and that somebody could read this as not changing the coverage territory. Your Honor, for the coverage, the way the coverage territory provision functions is it's to define where an accident occurs that can meet a requirement of this policy. These are different requirements, and they all can exist together. There's many examples. I can think of one from the 80s where the state of Vermont brought, in conjunction with a class of Vermont residents, an action against a New York paper mill who released contaminants into Lake Champlain that contaminated and damaged property in Vermont. So from Vermont's perspective, to have operations outside of Vermont that cause injury in Vermont still implicates their interest. It's still something they care about, and so that would... I'm not disagreeing with that at all. I mean, I think that Judge Shelby had a reasonable hypothesis as to what it might mean. But other people could read it differently, is my point. Respectfully, Your Honor, I don't think they could, because Vermont changes have meaning, and we presume it has meaning as long as it can be harmonized with the rest of the provision, and that is a bedrock Utah principle and is consistent with other policies. It just seems that it's a very cursory way to create a change to Coverage D. Your Honor, there could be clearer ways, but the question is, as you've articulated it, what is a reasonable way to read the policy? And I don't think it is reasonable to see the language Vermont changes and to ignore it, to delete it. When the endorsement says this changes the policy, you could have any connection with Vermont, and you would still not trigger Coverage D in our scenario. Do we want, as a matter of Utah law, for insurers to see the heading, and this changes coverage, and then to have to go back through the entire policy and try to figure out how it changes coverage? Your Honor, I think this is actually very simple, and it tells you right underneath that language how it changes the coverage, which is it applies to Vermont. We know that from the structure of the policy. You're right, it does say, it says, endorsement, ads section titled Coverage D pollution, bodily injury and property damage. It doesn't say anything about to claims involving Vermont, to claims in states other than Missouri. Right before that, it says Vermont changes underneath the provision, providing that the policy is changed. There is no explanation for that language other than that there is a nexus to Vermont. There's no explanation for the language. I agree with that. Your Honor, I understand that the language could be, it could specifically spell out in more clarity the obligation of the endorsement, but under the eight corners rule in Utah, the court's task is looking at the four corners of the policy as applied to the four corners of this action, and as applied to this action, there's no meaning that can be given to Vermont changes. There's no way to interpret that to apply here without just ignoring the words entirely. Instead, Shelby's provision recognizes the meaning of those words and also recognizes the meaning of coverage territory and the pollution liability hazard, reads them together, reads them in light of the structure, and reaches the only plausible interpretation that doesn't disregard anything in the policy, but instead brings it together as a whole. I'm sorry, go ahead. I just want to clean up a jurisdictional thing on diversity. You've pleaded that Steadfast is an Illinois corporation. What you meant to say is that it was incorporated in Illinois. Is that right? I believe that is correct, Your Honor. I'm just always checking those things. Absolutely, Your Honor. I take it that in this action, there's no obligation for us to say what sort of nexus there is. That's under your reading of the case. The question is just there has to be some nexus. That's absolutely right, Your Honor. The court looks at the application of the policy to the Missouri action here. That's the eight corners rule. It doesn't need to engage in what in the abstract it could mean as applied to a different scenario. It's sufficient here that any connection to Vermont, any meaning given to the Vermont changes language, means it does not apply to this Missouri action. I see that my time has expired. If there are no further questions, I appreciate your time today. Thank you, Counsel. Just a few brief points, and if I could pick up on the last question that you asked for a moment about whether or not this court needs to decide what that nexus might be today. Perhaps the answer is this court does not. But the answer is reasonable insurance, purchasing insurance need to decide that. And the ability of a reasonable insurer to understand what the quote-unquote nexus, by the way, a word that does not appear in the policy, for them to know what they're doing next means that the policy should be clearer than to just rely on the word Vermont and then decide what it means later on, and perhaps not even in this case, perhaps in another case. In addition to the other points that were raised in our briefing, I do want to focus, perhaps most importantly at the end on this, that the insurance company itself is entirely in charge of the structure that it provides for the policy. It's entirely in charge of the fact that its Missouri pollution exclusion only applies to coverage A. It doesn't apply to coverage D. It's entirely in charge of the fact that it extended a coverage D instead of writing some other endorsement that said that for the purposes of Vermont, the pollution exclusion will not apply in coverage A, for instance. In this particular instance, the policy should be enforced as written. Utah does not permit courts to rewrite the contract to supply terms which the party omitted or edit the contract because a party failed to include language to protect its rights. And I would respectfully submit that if we are talking about taking the word Vermont and then adding to it nexus or connection with or anything else, we're now adding words to describe what that heading meant instead of taking the policy for what it meant in the first place, which is in the body of the text itself. But the whole issue here is that there's no need to use the word Vermont or Missouri or Indiana if it doesn't have any meaning. And it just makes common sense that Vermont changes means that this is going to apply to things that happen in Vermont or that affect Vermont. If the policy did not also contain common sense sentences about what the geographic bounds of that coverage D were, I might agree with you, Your Honor. Well, it contains very broad sentences about what they are, but then this seems to take it away. I do not believe, look, the standard in the Utah courts is that the words can be harmonized if possible. It's not in every instance. And the answer is that if we're dealing with canons of contractual construction, the old saw being that you can always find one to support your position, the point here is that the insured is not in charge of how to write this policy in a clearer way. The insurer is. And if there's any ambiguity at all, it would go in favor of the insured and in favor of coverage. I'd be happy to answer any other questions if any of your honors has. No. Thank you, counsel. Thank you. Case is submitted.